# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6391 | **DATE** | 9/28/2001 |
| **CASE TITLE** | HEATHER PLOOG vs. HOMESIDE LENDING, INC., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  The Court adopts Magistrate Judge Ashman's Report and Recommendation and denies plaintiff's motion to certify the classes. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | SEP 28 2001 date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| CG | courtroom deputy's initials | 01 SEP 28 PM 12: 22 |
| | | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number 113

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HEATHER A. PLOOG, )
)
    Plaintiff, ) 00 C 6391
) Judge Guzman
)
v. ) Magistrate Judge Ashman
)
HOMESIDE LENDING, INC. and )
FIRST CHICAGO NBD MORTGAGE CO,. )
)
    Defendants. )

**DOCKETED**
**SEP 2 8 2001**

## MEMORANDUM OPINION AND ORDER

This consumer lending case is before the Court on plaintiff's objections to Magistrate Judge Ashman's Report and Recommendation in which he recommends that plaintiff's motion for class certification be denied. Plaintiff's claim, filed pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)(2)(A)-(C), involves written communications (or lack thereof) between HomeSide Lending, Inc. ("HomeSide") and its borrowers, and between HomeSide and credit bureaus. For the following reasons, the Court adopts Magistrate Judge Ashman's Report and Recommendation and denies plaintiff's motion to certify the classes.

I.    **Background/Facts**

Plaintiff purchased her home in 1998, financing the purchase with a mortgage from defendant NBD First Chicago ("NBD"). (Second Am. Compl. ¶ 2.) NBD created an escrow deficiency of $5,919.77 when it charged plaintiffs account erroneously for the real estate taxes of properties not

1

owned by plaintiff. (*Id.* ¶ 8.) After servicing of the mortgage was transferred to HomeSide, HomeSide sent plaintiff a letter on June 4, 1999 telling her that her tax escrow balance was at negative $, 919.77 (*Id.* ¶¶ 9-10.) Ms. Ploog telephoned HomeSide on June 7, 1999, in response to this letter. A customer service representative explained that someone there would look into her problem and get back to her. (*Id.* ¶ 11.) Ploog made several telephone calls to HomeSide regarding this problem between June and November, 1999 and was required to re-explain her problem each time. (*Id.* ¶ 12.)

Ms. Ploog determined on November 18, 1999 that HomeSide had four incorrect PIN numbers on her account and sent HomeSide a letter that day informing it of her discovery, providing it with her correct PIN number, demanding that HomeSide correct its records accordingly, and asking that HomeSide discontinue making escrow payments from her account. (*Id.* ¶¶ 13-14.) Nevertheless, HomeSide made an incorrect payment on December 20, 1999. (*Id.* ¶ 15.)

Thereafter, on March 6, 2000, Ploog sent HomeSide a letter requesting that her PIN be corrected, and attached her tax bill to verify the correct PIN number. (*Id.* ¶ 16.) Ploog then called HomeSide on March 8 and re-explained her escrow problem. When she requested to speak to a supervisor, she was told that a supervisor would call her back. (*Id.* ¶ 17.) She called HomeSide again on May 26 demanding to speak to a supervisor. She was transferred to Kimberly Peet to whom she again re-explained her problem and provided her correct PIN number. She later learned that Ms. Peet was not a supervisor. (*Id.* ¶ 18). When she called Ms. Peet again on July 11, she was told that she would be receiving a refund of $2,171.27 for the December tax. (*Id.* ¶ 19.) The quarterly

mortgage statement reflected the refund and a negative escrow balance of $4,481.61. (*Id.* ¶ 20.)

Ploog filed a putative class action Under 12 U.S.C. § 2605(e)(2)(A)-(C) on October 16, 2000. (R. & R. at 5.) The complaint related to HomeSide's failure to respond to and correct her escrow account problem within 60-days of receiving either her November 18, 1999 letter or her March 6, 2000 letter (as she believe both constituted "qualified written requests"). (*Id.*) In the complaint, she asserted that HomeSide engaged in a pattern or practice of failing to respond to "qualified written requests" in accordance with 12 U.S.C. § 2605(e)(2)(A)-(C).

Then, on October 30, 2000, after HomeSide had purported to have corrected her problem, it sent her a letter stating that her escrow payment is $2,488.96 and that her payment of $1,059.76 was insufficient. (Second Am. Compl. ¶ 25.) This would equate to over $17,000 a year in escrow payment despite the fact that Ploog's taxes were only $3,471.42 the previous year. (*Id.* ¶ 26.) Ploog wrote to HomeSide in response to this letter, requesting that corrections be made and that her scheduled payment should be returned to $1,059.12. She also enclosed an escrow waiver form and requested that she be able to make her own tax payments. (*Id.* ¶ 27.)

The next letter HomeSide sent to Ploog stated that her escrow payments were overdue and that she had been charged a $52.96 late fee. It also warned that it would report her to credit bureaus if she failed to bring the loan "current." The letter did not address Ploog's previous letters. (*Id.* ¶ 28.) She sent HomeSide another letter on January 2, 2001, immediately after receiving this letter requesting the miscalculation to be fixed and demanding that HomeSide refrain from reporting her

3

to credit bureaus. (*Id.* ¶ 29.)

Ploog received a January 12, 2001 letter from HomeSide stating that her request for an escrow waiver had been approved. The letter acknowledged her previous letters only to the extent that it stated that her monthly payment would be $1,059.12. (*Id.* ¶ 30.) However, a letter received shortly after this letter, dated January 11, 2001 and postmarked January 19, 2001, informed her that she was in default. (*Id.* ¶ 31.) Finally, HomeSide sent Ploog two letters on January 23, 2001 indicating that she had been reported to a credit bureau and that HomeSide had requested a correction. (*Id.* ¶ 32.)

Ploog returned to court to supplement her complaint on January 23, 2001 and February 13, 2001 to amend her complaint. It was at this time that she added the class claim based on the fact that HomeSide had reported her to a credit bureau within 60-days of receiving her letters. She alleged that HomeSide engages in a pattern or practice of violating § 2605(e)(3). (R. & R. at 7.) After months of discovery and several extensions of time, Magistrate Judge Ashman advised this Court in the Report and Recommendation dated August 27, 2001 that plaintiff's motion for class certification should be denied. (*Id.*)

## II. 12 U.S.C. § 2605(e)

12 U.S.C. § 2605(e), the provision of RESPA that plaintiff brings her class claims under, provides as follows:[1]

(e) Duty of a loan servicer to respond to borrower inquiries

(1) Notice of receipt of inquiry.

    (A) In general. If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

    (B) Qualified written request. For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that -

        (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

        (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry. Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable before taking any action with respect to the inquiry of the borrower, the servicer shall-

    (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit

---

[1] Other relevant sections of RESPA are provided later in this Memorandum Opinion and Order where relevant.

5

> > to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> > (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
> >
> > > (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> > >
> > > (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
> >
> > (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
> >
> > > (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
> > >
> > > (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.
>
> (3) Protection of credit rating. During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 603 of the Fair Reporting Act [15 U.S.C. § 1681a]).

## III. Discussion

Federal Rule of Civil Procedure ("Rule") 72 provides for the referral of pretrial matters to a magistrate judge. Under the Rule, the magistrate's order may be subject to review by a district

court judge. However, pursuant to 28 U.S.C. § 636(b)(1)(A), a motion for class certification may not be decided independently by a federal magistrate judge. Accordingly, the District Court has the authority to make the final determination on the motion, and must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

For a class to be certified, the plaintiff must first satisfy every one of the four requirements of Federal Rule of Civil Procedure ("Rule") 23(a): "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Once these requirements are satisfied, the plaintiff must also satisfy one of the Rule 23(b) requirements. *Cwiak v. Flint Ink Corp.*, 186 F.R.D. 494, 496 (N.D. Ill. 1999). Since plaintiff has moved to certify the classes under Rule 23(b)(3), plaintiff must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed R. Civ. P. 23(b)(3). A failure of any of the requirements of Rule 23 results in a denial of class certification. *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982).

Plaintiff has objected to Magistrate Judge Ashman's findings and recommendations regarding the absence of commonality and typicality under Rule 23(a), and the absence of predominance

7

under Rule 23(b)(3). This Court will address these objections as they relate to classes A and C, as the Court agrees with Judge Ashman's finding that Class A consumes Class B.[2]

It is important to first note that district courts are not required to accept the allegations in the complaint as true in deciding whether or not to grant class certification. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Instead, "a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 676. According to the Seventh Circuit Court of Appeals, "sometimes it may be necessary for the court to probe beyond the pleadings before coming to rest on the certification question.... [A]ctual, not presumed, conformance with Rule 23(a) remains... indispensable." *Szabo*, 249 F.3d at 677 (quoting *General Telephone Co. v. Falcon*, 457 U.S. 147, 160 (1982)). The Court further noted that "[p]laintiffs cannot tie the judge's hands by making allegations relevant to the merits and class certification." *Id.* at 677. Courts are not foreclosed to inquire "into whether plaintiff is asserting a claim which, assuming its merit, will satisfy the requirements of Rule 23 as distinguished from an inquiry into the merits of plaintiff's particular individual claim." *Id.* (quoting *Eggleston*, 657 F.2d at 895). It is apparent to the Court that Magistrate Judge Ashman investigated for "actual conformance" before providing the Court with the Report and Recommendation that plaintiff now objects to.

Before proceeding to plaintiff's substantive objections, this Court will address plaintiff's contention that she was prejudiced by Magistrate Judge Ashman's discovery decisions. First, it

---

[2] The Court agrees with Magistrat Ashman that failing to take corrective action, alone, cannot constitute a violation of § 2605(e)(2). For liability to attach, a servicer would also need to fail to provide an explanation as described in § 2605(e)(2)(B)-(C).

8

appears as though plaintiff may be under the mistaken impression that Judge Ashman has proffered a recommendation regarding numerosity. The judge specifically noted in his Report and Recommendation that nothing in the Report and Recommendation should be construed as a finding in favor of or against Ploog on numerosity. (R. & R. at 7.) He did not provide a recommendation as to this particular Rule 23 requirement because the parties agreed on July 11 that to avoid the substantial burden and expense of potentially unnecessary discovery, consideration of the numerosity requirement under Rule 23(a) would be deferred until the Court has rendered its opinion with regard to the other requirements of Rule 23. The agreement provides for further discovery on numerosity should the Court find that the other requirements of Rule 23 are met as to any of the classes. For these reasons, the Court will not further address plaintiff's objections regarding numerosity.

To the extent that plaintiff raises objections to Magistrate Judge Ashman's discovery orders, separate from her mistaken belief that the judge decided the issue of numerosity, the Court points to Rule 72(a). The Rule specifically states,

> [w]ithin 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Fed. R. Civ. P. 72(a). The official docket shows that plaintiff has failed to file written objections as to any discovery order before this Court. Therefore, the Court will not address these objections as they are untimely.

Although it is not expressly clear to the Court, plaintiff seems to object to Magistrate Judge Ashman's finding that the Rule 23(a) commonality requirement has not been satisfied. Under Rule 23(a)(2), there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). However, "[n]ot all factual or legal questions raised in the litigation need to be common so long as at least one issue is common to all class members." *McDonald v. Washington Mut. Bank*, No. 99 C 6884, 2000 WL 875416, at *2 (N.D. Ill. June 26, 2000). The commonality requirement is usually met where there is a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A common nucleus of operative fact is generally found in instances where "the defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

Plaintiff has argued that the factor common to all class members is that HomeSide engaged in a pattern or practice of violating the Cranston-Gonzales amendments to RESPA, and now seems[3] to disagree with Judge Ashman's conclusion that the evidence is insufficient to support actual conformance with Rule 23(a)(2).[4] For both classes, Plaintiff points to the same evidence to support a pattern or practice of violating RESPA: complaints made by purported HomeSide borrowers to the Federal Trade Commission; complaints posted by purported HomeSide borrowers on two Internet

---

[3] The Court was unclear as to whether plaintiff has objected to the Magistrate Judge's recommendation as to commonality. Because the Court recognizes that many courts consider the commonality requirement to be subsumed by the predominance requirement, in that it has a higher threshold, we assume that plaintiff intended to object.

[4] "The term 'pattern or practice' in a federal statute is not a term of art but rather is defined according to the usual meaning of the words. The term suggests a standard or routine way of operating." *Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 WL 53666 (E.D. Pa. 2000).

bulletin boards; alleged "admissions" from HomeSide's computer records[5]; a settlement entered into between HomeSide and Florida; a settlement agreement entered into between HomeSide and West Virginia; and letters drafted by or on behalf of two people who had borrowed from HomeSide at some point in time. The Court finds, for all of the same reasons that Magistrate Judge Ashman did, that this evidence, while indicative of some customer service problems, does not demonstrate a standard or routine way of operating in violation of the 12 U.S.C. § 2605(e). In any event, even if plaintiff could meet this requirement, she cannot meet the higher predominance threshold (discussed *infra*).

Plaintiff also objects to Magistrate Judge Ashman's recommendation regarding the absence of typicality, required under Rule 23(a). Under Rule 23(a), the class representative is required to show that either her claims or her defenses are typical of those of the class. Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Factual distinctions between the claims of the named plaintiffs and the other class members do not necessarily destroy typicality. *Anderson v. New Dimensions Fin. Services*, No. 00 C 3725, 2001 WL 883700 (N.D. Ill. Aug. 7, 2001). Where there are distinctions, typicality is usually found where the common facts almost entirely establish liability and the individual issues relate to other matters. *See*

---

[5]The Court did not consider the alleged "admissions" by defendant that it violated RESPA. The Court acknowledges that the record indicates that the fact that HomeSide had tasks open after 60-days does not necessarily mean that they had violated RESPA as to each one, given that a "qualified written request" is not required before a task is opened. (Duncan Aff.)

11

*Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 676 (N.D. Ill. 1989). But, a plaintiff's claims are not typical of the class's claims if "proving them does not necessarily prove all the proposed class members' claims." *Calkins v. Fidelity Bond and Mortgage Co.*, No. 94 C 5971, 1998 WL 719569 (N.D. Ill. Oct. 8, 1998).

With regard to typicality, plaintiff's sole argument is that Magistrate Judge Ashman's decision did not address her position that typicality is satisfied for the class of people who *never received* a written response or any action at all[6]. Plaintiff alleges that Ms. Ploog did not receive a 60-day response to one of her qualified written requests and that her claim is typical of this subset of the class. According to plaintiff, the underlying complaints are immaterial. The court disagrees.

The contents of the other class members' correspondences are, in fact, material to typicality[7] because the threshold question is whether a finding that HomeSide violated RESPA with respect to

---

[6]Magistrate Judge Ashman addressed this group when he addressed Class A because he found that Class A consumed Class B.

[7]Plaintiff is under the impression that every letter sent to HomeSide by a borrower constitutes a qualified written request. It is not that simple. "Qualified written request" is defined as: "[A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that - (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). A "qualified written request" must seek information pertaining to the "servicing" of the loan. Servicing is defined as: "[R]eceiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10, 12 U.S.C. § 2609, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Defendant does not specify in its records which tasks were opened in response to qualified written requests.

12

Ploog will necessarily result in a finding that HomeSide violated RESPA with regard to the other class members. For this to be the case, all of the class members' correspondences to HomeSide would first have to meet the requirements of a "qualified written request.[8]" This is because to determine that HomeSide treated the class members similarly (by not responding when they were required to), the requirement to respond must be triggered by a qualified written request.[9] The Court recognizes that the individual inquiries here relate to liability (given that we cannot assume that all of the class members triggered the requirements by sending a qualified written request), and proving plaintiff's claim will not necessarily prove the other class members' claims. Therefore, typicality is not satisfied, even with regard to this limited subclass.

Finally, plaintiff objects to Magistrate Judge Ashman's recommendation regarding the predominance requirement of Rule 23(b)(3), and argues that the only individual issue is the identification of the individual class members, which would be capable of ministerial determination from the defendant's records.[10] Under Rule 23(b)(3), before a class can be certified, the plaintiff

---

[8] For examples of where courts have found borrower letters to constitute "qualified written requests," see *Cortez v. Keystone Bank*, No. 98-2457, 2000 WL 53666 (E.D. Pa. May 2, 2000) and *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F.Supp.2d 1156 (M.D. Ala. 1999). For an example where a court found that a borrow letter did not constitute a "qualified written request," see *MorEquity, Inc. v. Naeem*, 188 F.Supp.2d 885 (N.D. Ill. 2000).

[9] While the other class members would still have reason to complain if they were having difficulty in obtaining responses from HomeSide, if their complaints to HomeSide were not in the form of qualified written requests, plaintiffs claims would not be typical of theirs. While they might seem to be from a broad perspective, they would not be from a legal perspective.

[10] The Court disagrees with plaintiff's understanding that HomeSide has admitted at least 576 violations due to the fact that they admit they had this many tasks open past 60 days. A violation of RESPA cannot be assumed from the fact that a task remained open for greater than 60 days. Any kind of communication from a borrower, whether it satisfies the requirements of a

must show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). In determining whether the predominance requirement has been met, "the Court considers the substantive elements of the Plaintiff's cause of action, the proof necessary for the various elements, and the manageability of the trial on these issues." *Margolis v. Caterpillar, Inc.*, 815 F.Supp. 1150, 1153 (C.D. Ill. 1991).

The standard is met "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, . . . [since s]uch proof obviates the need to examine each class member's individual position[.]" *Golon v. Ohio Savings Bank*, No. 98 C 7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999) (quoting *In re Industrial Gas Antitrust Litigation*, 100 F.R.D. 280, 288 (N.D. Ill. 1983)). Following this theory, "[c]ertification under Rule 23(b)(3) is improper where liability determinations are both individual and fact-intensive." *Hickey v. Great Western Mortgage Corp.*, No. 94 C 3638, 1995 WL 121534, at *4 (N.D. Ill. Mar. 17, 1995). At the same time, "the hypothetical existence of individual defenses and the need for individual proofs on subsidiary questions will not overcome the predominate common question and defeat the class." *Avery v. State Farm Mut. Auto Ins. Co.*, 321 Ill.App.3d 269, 746 N.E.2d 1242, 1255 (5th Dist. 2001).

The Court is confident that even if plaintiff could establish the other requirements of Rule

---

"qualified written request" or not, requires the opening of a task. Defendant's employees do not record when they open a task in response to a "qualified written request." Instead, they merely record whether the communication was by way of telephone or mail, etc. (Duncan Aff.) Again, we cannot assume that all mail correspondence meets the requirements of a "qualified written request." For these reasons, the individual plaintiffs cannot be determined by a ministerial review of defendant's records.

23(a) (including the lower threshold commonality requirement), neither of the classes could meet the predominance requirement of Rule 23(b)(3) because of the fact-intensive individual inquiries required to determine liability as to each plaintiff.[11] Class certification is consistently denied in transaction-specific cases such as the one at bar.[12] Many cases support the Court's adoption of Magistrate Judge Ashman's recommendation with regard to predominance. For instance, in *Hill v. Amoco Oil Co.*, No. 97 C 7501, 2001 WL 293628 (N.D. Ill. Mar. 19, 2001), a Title VII case in which plaintiffs alleged they were discriminated against by being required to prepay for gas, the court stated that a number of issues would have to be examined individually as to each plaintiff in order to determine liability, and denied class certification on the grounds that individual issues bearing on liability predominated over common issues. *Id.* at *7.

The court analogized *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228 (11th Cir. 2000) in which the plaintiff alleged that Avis had a policy of denying corporate accounts to businesses that were owned or operated by Jewish people. *Id* at *7-8. The court in that case found that individual issues predominated over the issue of whether Avis engaged in a pattern or practice of discrimination. It noted that while the issue of whether Avis maintains such a pattern or practice may be relevant in a given case, it could not establish that the company discriminated against every member of the putative class because individual questions going to liability, such as whether they

---

[12]From a review of § 2605(e), it is clear that numerous individual findings are required to determine liability. First, a court would have to determine whether each plaintiff's correspondences to HomeSide meet the requirements of a "qualified written request." Once this is determined, a court still has to determine if HomeSide responded as required under the individual section triggered by a borrower's "qualified written request."

15

financially qualified for a corporate account and whether the individual members of the class would be using the vehicles in a manner that justified the cost to Avis, must first be established. *Id.* at *8.

Both parties cite to *McDonald v. Washington Mutual Bank*, No. 99 C 6884, 2000 WL 875416 (N.D. Ill. June 26, 2000). With regard to Class I (similar to Ploog's Class A), which alleged that the defendant had a pattern or practice of failing to respond to customers' "qualified written requests," the *McDonald* court found that individual issues predominated because the actions (or inactions) of the defendant in response to "qualified written requests" would have to be evaluated on a case-by-case basis.[13] *Id.* at *4. The Court agrees with this analysis[14] (but would additionally regard the determination of whether a letter constitutes a "qualified written request" as an individualized inquiry). With regard to Class III (similar to Ploog's Class C), which alleged that the defendant provided information to a consumer reporting agency during the 60-day period after receiving "qualified written requests," the court found that the common issues predominated and certified the class because "the 'qualified written requests,' the dates defendant received these requests, and the dates any delinquency was reported to a credit bureau are all fairly easy to determine." *Id.* at *5. The Court disagrees with this analysis, as Magistrate Judge Ashman did, because a determination of whether this provision has been violated requires more than rote matching up of dates.

---

[13]The court came to this conclusion even though it disregarded the defendant's argument (that this Court finds merit in) that the determination of whether a correspondence constitutes a "qualified written request" requires an individualized inquiry.

[14]It appears as though plaintiff is under the impression that the issue of whether a borrower's letter constitutes a qualified written request is something that must be brought up by the defendant as a defense to liability. However, this is not the case. The statute puts this burden on the plaintiff to establish liability. *See* 12 U.S.C. § 2605(e)(1)(A).

The Court agree's with Magistrate Judge Ashman that every written correspondence sent to HomeSide cannot automatically be regarded as a "qualified written request." Instead, a judge must first determine whether the correspondence meets the requirements of 12 U.S.C. § 2605(e)(1)(B) and § 2605(i)(3). It is not until this preliminary analysis has been completed that a matching of dates is more appropriate. Even at this point, a judge must determine whether the subject matter of the "qualified written request" matches the subject matter of the correspondence sent to the credit bureau within the 60-day period.[15]

While numerosity has not been addressed, it need not be. Plaintiff's failure to satisfy the requirements of Rule 23 render the question of numerosity moot. The Court cannot certify plaintiff's classes.

---

[15] For more cases finding that the need for individualized inquires regarding liability defeats class certification, see *Hickey v. Great Western Mortgage Co.*, No. 94 C 3638, 1995 WL 121534 (N.D. Ill. Mar. 17, 1995), and *Anderson v. New Dimensions Fin. Services*, No. 00 C 3725, 2001 WL 883700 (N.D. Ill. Aug. 7, 2001).

## IV. Conclusion[16]

For the abovementioned reasons, the Court adopts the Report and Recommendation of Magistrate Judge Ashman in which he recommends that plaintiff's motion for class certification be denied, and therefore denies plaintiff's motion for class certification. This is a final and appealable order.

**SO ORDERED.**

ENTER: 9/28/01

HON. RONALD A. GUZMAN

**United States Judge**

---

[16]The Court would like to address plaintiff's argument that if this Court were to adopt Magistrate Judge Ashman's finding regarding individual issues, there would be no possibility that a class will ever be certified under 12 U.S.C. § 2605. First, this case is limited to subsection (e) of § 2605. Therefore, the Court has not eliminated the possibility of class certification under § 2605 altogether. Next, the fact that the Congress has authorized class actions under RESPA does not mean that every putative class is automatically entitled to certification. As in all other cases, the requirements of Rule 23 must first be met. Finally, the Court points plaintiff to *Golon v. Ohio Savings Bank*, No. 98 C 7430, 1999 WL 965593, at *5 (N.D. Ill. Oct. 15, 1993) to demonstrate that other courts have found certain RESPA claims inappropriate for class treatment. The court in this case pointed out that several district courts have concluded that the individualized inquiries required by the HUD policy statement with regard to section 8 necessarily precludes class certification.