Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6391 | **DATE** | 3/18/2002 |
| **CASE TITLE** | HEATHER A. PLOOG vs. HOMESIDE LENDING, INC., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 4/5/2002 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Court denies defendant Homeside's motion to dismiss [117-1] and denies defendant First Chicago's motion to dismiss [53-1]. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 19 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 130 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| CG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEATHER A. PLOOG, | ) |
| Plaintiff, | ) |
| v. | ) Judge Ronald Guzmán |
| | ) 00 C 6391 |
| HOMESIDE LENDING, INC. and | ) |
| FIRST CHICAGO NBD MORTGAGE CO., | ) |
| Defendants. | ) |

DOCKETED
MAR 19 2002

## MEMORANDUM OPINION AND ORDER

Heather Ploog ("Ploog") has sued First Chicago NBD Mortgage Co.'s ("First Chicago") for breach of contract and breach of fiduciary duty and has sued HomeSide Lending, Inc. ("HomeSide") for violating the Cranston-Gonzales Amendments to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*, as well as for negligence, and breach of fiduciary duty. Before the Court is First Chicago's motion to dismiss Ploog's breach of contract (Count II) and breach of fiduciary duty (Count III) claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and 12(b)(7) and 28 U.S.C. § 1367(c)(4). Also before the Court is HomeSide's motion to dismiss Counts I, IV, and V pursuant to Rule 12(b)(1). For the reasons provided in this Memorandum Opinion and Order, both motions are denied.

## FACTS

On April 30, 1998, Ploog and her husband, David B. Bixby ("Bixby") purchased a home with a residential mortgage loan ("Bixby-Ploog Mortgage") from First Chicago. (Second Am. Compl. ¶ 7.) First Chicago paid several property taxes based on the Property Identification Numbers ("PIN") in the Bixby-Ploog Mortgage for which Ploog was not responsible with Ploog's escrow funds which created a negative tax escrow balance of $5,919.77. (*Id.* ¶ 8.) Thereafter, servicing of the Bixby-Ploog Mortgage was transferred to HomeSide. (*Id.* ¶ 9.) On June 4, 1999, HomeSide sent Ploog a letter stating that her tax escrow balance was a negative $5,919.77. (*Id.* ¶ 10.)

130

On June 7, 1999, Ploog made a phone call to HomeSide and inquired as to the nature of this negative escrow balance. (*Id.* ¶ 11.) Between June 1999 and November 1999, Ploog made several phone calls to HomeSide asking that her escrow balance be corrected. (*Id.* ¶ 12.) On November 18, 1999, Ploog determined that HomeSide had four PIN numbers on her account that were all incorrect. (*Id.* ¶ 13.) On November 18, 1999, Ploog sent HomeSide a letter informing it that taxes were incorrectly paid from her account, giving HomeSide her correct PIN number and demanding that HomeSide correct its records, and requesting that HomeSide make no escrow payments from her account. (*Id.* ¶ 14.) Despite this letter, HomeSide made an incorrect tax payment on December 20, 1999. (*Id.* ¶ 15.) Ploog made additional attempts to correct her account with HomeSide. (*Id.* ¶ 16-20.)

Prior to the filing of her original complaint, Ploog never received a substantive response in writing from HomeSide regarding her November 18, 1999 letter or her March 6, 2000 letter. (*Id.* ¶ 21.) As of the date of filing her original complaint, HomeSide had not corrected Ploog's tax escrow problem. (*Id.* ¶ 22.) HomeSide had not corrected Ploog's tax escrow problem within 60 business days of either her November 18, 1999 letter or her March 6, 2000 letter. (*Id.* ¶ 23.)

On October 30, 2000, after HomeSide had purportedly corrected Ploog's tax escrow problem, HomeSide sent Ploog a letter stating that her scheduled payment was $2,488.96, which was incorrect, and that her payment of $1,059.76 was insufficient to complete her escrow payment. (*Id.* ¶ 25-26.) Ploog wrote HomeSide again on December 1, 2000, requesting that HomeSide correct her tax escrow account and change her scheduled payment to $1,059.12. (*Id.* ¶ 27.) Ploog also enclosed an escrow waiver and requested that she be allowed to make her own tax payments. (Id.) HomeSide sent Ploog a letter that did not address the issues in her letter, but stated that Ploog's escrow payments were overdue and charging her a $52.96 late fee. (*Id.* ¶ 28.) The letter from HomeSide also stated that it would report Ploog to the credit bureaus if she did not bring her loan current. (*Id.* ¶ 28.) Ploog wrote to HomeSide on January 2, 2001 requesting that HomeSide correct its miscalculation and demanding that HomeSide not report her

to any credit bureau. (*Id.* ¶ 29.) On January 12, 2001, HomeSide sent Ploog a letter addressing her escrow, but this letter did not mention any of the previous letters from Ploog, except to state that her escrow payment would be $1,059.12. (*Id.* ¶ 30.) Shortly thereafter, Ploog received a letter from HomeSide dated January 11, 2001 and postmarked January 19, 2001 stating that she was in default. (*Id.* ¶ 31.) On January 23, 2001, HomeSide sent Ploog two letters stating that Ploog and Bixby were reported to a credit bureau as being delinquent and that HomeSide had requested a correction. (*Id.* ¶ 32.)

Ploog filed this lawsuit, three counts of which assert claims against HomeSide and two counts of which assert claims against First Chicago. In Count I, she asserts a class claim and an individual claim against HomeSide for violations of the Cranston-Gonzales Amendments to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2606. On September 28, 2001, this Court denied Ploog's motion to certify the classes, so the entire complaint must be viewed as alleging individual claims. Count I, Count IV and Count V are against HomeSide. In Count I, Ploog claims HomeSide violated RESPA. In Count IV, she claims HomeSide was negligent for continually paying the wrong taxes from her escrow account. In Count V, Ploog alleges that HomeSide breached a fiduciary duty.

Counts II and III are against First Chicago. In Count II, Ploog alleges breach of contract for First Chicago's paying property taxes from her escrow account to properties not owned by her. In Count III, Ploog claims that First Chicago breached a fiduciary duty.

HomeSide has moved to dismiss Count I based on their Rule 68 offer, which they claim is greater than any award Ploog can receive in trial and thus makes Count I moot. HomeSide has also moved to dismiss Counts IV and V based on Rule 12(b)(1) for lack of Subject Matter Jurisdiction over the state law claims once the only federal claim is dismissed.

First Chicago has moved to dismiss Counts II and III pursuant to Rule 12(b)(6) and 12(b)(7) for failure to state a claim upon which relief can be granted and the failure to add an indispensable party, namely Bixby. First Chicago also argues that this Court should exercise its

3

discretion to deny supplemental jurisdiction with regard to Counts II and III because there is no common basis of fact or evidence between Ploog's claims against them and Ploog's RESPA claim, the only claim over which the Court has original jurisdiction.

## DISCUSSION

In ruling on a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. FED. R. CIV. P. 12(b)(6); *Gomez*, 811 F.2d at 1039. A motion to dismiss may be granted only if the court concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### A. RESPA Claim

Ploog claims that HomeSide has violated RESPA by failing to take corrective action pursuant to 12 U.S.C. § 2605(e), by failing to provide a response in writing within 60 business days setting out the corrective action taken or why corrective action is not warranted pursuant to 12 U.S.C. § 2605(c), and for reporting persons to credit bureaus within 60 days of those persons sending in a qualified written request pursuant to 12 U.S.C. § 2605(3). Ploog identifies five instances where HomeSide failed to respond to her qualified written requests: November 18, 1999; March 6, 2000; October 30, 2000; December 1, 2001; and January 2, 2001. Ploog argues that she has demonstrated a "pattern or practice of noncompliance" through these five qualified written requests and is entitled to $1,000 for each totaling $5,000 on the face of her complaint. Ploog alleges that she has suffered actual damages as well, in that HomeSide's actions has affected her job and caused her mental anguish. HomeSide argues that 12 U.S.C. §

4

2605(f)(1)(B)'s granting a maximum of $1,000 for demonstrating a "pattern or practice of noncompliance" is not for every violation and so a $1,000 statutory maximum is all Ploog could recover. Further, HomeSide asserts that mental anguish is not included in "actual damages" under 12 U.S.C. § 2605(f). HomeSide asserts that their $6,000 offer of settlement with regard to Count I is therefore more than Ploog could recover in court, thus making her Count I claim moot.

The Cranston-Gonzales Amendments to RESPA place requirements on servicers of federally related mortgage loans when they receive a qualified written request from a borrower. 12 U.S.C. § 2605 *et seq.* The servicer must provide a written response acknowledging the receipt of a qualified written request within 20 days of receiving the borrower's letter. 12 U.S.C. § 2605(e)(1)(A).

> The servicer must then do one of three things within sixty days of receiving the letter: (1) correct the borrower's account and inform the borrower of those corrections in writing; (2) investigate and provide a written explanation to the borrower of the reasons that the servicer believes the borrower's account is correct; or (3) investigate and provide a written explanation to the borrower of the reasons that the servicer cannot obtain the information that the borrower is requesting.

*Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d 809, 812 (N.D. Ill. 2001) (citing 12 U.S.C. § 2605(e)(2)). Also, during the sixty days after the servicer receives a qualified written request from the borrower, the servicer "may not provide information regarding an overdue payment relating to the borrower's letter to a consumer reporting agency." *Id.* at 812-13.

The damages provision of the Cranston-Gonzales Amendments to RESPA provides:

> (f) Damages and costs. Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>    (1) Individuals. In the case of any action by an individual, an amount equal to the sum of –
>       (A) any actual damages to the borrower as a result of the failure; and
>       (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

12 U.S.C. § 2605(f).

5

Ploog has alleged in her complaint five instances of her sending qualified written requests to HomeSide where she did not receive a response. Ploog has also alleged that HomeSide provided information to a consumer reporting agency within sixty days of her sending a qualified written request. Ploog's allegations are sufficient to state a claim for a violation of RESPA.

HomeSide has asserted that its settlement offer of $6,000 makes Ploog's Count I claim moot since it is more than she could recover in court. Where a party gives an offer for settlement that is the equivalent of a default judgment, or more than a default judgment, this settlement offer "eliminates a legal dispute upon which federal jurisdiction can be based." *Greisz v. Household Bank (Ill.), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999). So, if it is true that $6,000 is more than Ploog could win in court, then the claim must be dismissed as moot.

Ploog has alleged both actual and statutory damages. The first question that must be addressed is whether a plaintiff can recover $1,000 for each instance of a noncompliance with RESPA or whether the plaintiff can only recover $1,000 total for showing a "pattern or practice of noncompliance." Neither the Supreme Court nor the Seventh Circuit has addressed this question, so it appears to be one of first impression for this circuit. This Court agrees with the analysis in *Katz v. Dime Savings Bank, FSB*, in which the court determined that RESPA intended for individual statutory damages to be capped at $1,000 for proving a pattern or practice of noncompliance and not $1,000 for each instance. 992 F. Supp. 250, 258 (W.D.N.Y. 1997). "[W]hen a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Id.* (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992)). Adopting Ploog's reading ignores the "pattern or practice of noncompliance" language. If Congress had intended there to be statutory damages for each individual instance of noncompliance, it would not have inserted the "pattern or practice" language. *Katz*, 992 F. Supp. at 258. The phrase "for each such violation" in the beginning of the paragraph cannot be ignored, however. This language can be construed to mean that Ploog is entitled to recover actual damages for each violation of the act. *Id.* Construing the act in this

6

manner gives effect to all of the language in RESPA. *Id.* So, this Court holds that a plaintiff can recover actual damages for each violation of the act and statutory damages no greater than $1,000 by proving a pattern or practice of noncompliance. As such, Ploog is entitled to recover $1,000 for her allegations against HomeSide regarding a pattern or practice of noncompliance with RESPA.

Further, in *Hrubec v. National Railroad Passenger Corp.*, the court analyzed what could constitute actual damages. 829 F. Supp. 1502, 1505 (N.D. Ill. 1993). The *Hrubec* court determined that actual damages could include emotional or mental distress under 26 U.S.C. § 7341(a)(2), which permits recovery for mental or emotional anguish against non-governmental persons who knowingly or negligently disclose information in violation of 26 U.S.C. § 6103. *Id.* The *Hrubec* court made this determination based on an analysis of other courts' determinations of what constitutes actual damages, including: *United States v. Balistrieri*, 981 F.2d 916, 931 (7th Cir. 1992) (holding that actual damages include emotional distress under the Fair Housing Amendments Act); *Biggs v. Village of Dupo*, 892 F.2d 1298, 1304 (7th Cir. 1990) (holding that actual damages include mental distress under 42 U.S.C. § 1983); *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir. 1983) (holding that actual damages include mental anguish under the Equal Credit Opportunity Act, 15 U.S.C. § 1691e); and *Millstone v. O'Hanlon Reports, Inc.* 528 F.2d 829, 834-35 (8th Cir. 1976) (holding that actual damages include emotional distress and humiliation under the Fair Credit Reporting Act, 15 U.S.C. § 1681n). *Id.*

The reasoning in *Hrubec* has been adopted by other courts. The *Johnstone* court discussed *Hrubec* and determined that because "some of the statutes discussed in *Hrubec* contain an 'actual damages' provision similar to the provision in RESPA and because each of those statutes, like RESPA, protects individuals' private information, the court's analysis in *Hrubec* is applicable to this case." *Johnstone v. Bank of America, N.A*, 173 F. Supp. 2d 809, 815 (N.D. Ill. 2001) (holding that RESPA's actual damages provision includes recovery for emotional

7

damages). Part of the reasoning adopted by *Johnstone* is that emotional damages should be included in actual damages because "such damages 'will compensate individuals for privacy violations by allowing damages for what, in some instances, may be the only harm resulting from the disclosure of confidential information – namely, emotional distress." *Id.* (citing *Hrubec*, 829 F. Supp. at 1506).

HomeSide argues that Ploog is not entitled to receive actual damages for her alleged mental distress. HomeSide cites *Katz* for the proposition that a plaintiff may not recover non-monetary losses as part of actual damages under the Cranston-Gonzales Amendments. *Katz*, 92 F. Supp at 255. The *Katz* court determined that RESPA was not a consumer protection statute and refused to construe 12 U.S.C. § 2605(f) as allowing recovery for anything but monetary losses as actual damages. *Katz*, 92 F. Supp. at 255-56. The *Katz* court acknowledged that many courts have held consumer protection statutes are to be interpreted broadly in order to give effect to their remedial purposes." *Id.* The *Johnstone* court also looked at whether RESPA was a consumer protection statute and noted that "the express terms of RESPA clearly indicate that it is, in fact, a consumer protection statute . . . ." *Johnstone*, 173 F. Supp. 2d at 816. The court in *Johnstone* adopted the reasoning of *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F. Supp. 2d 1156 (M.D. Ala. 1999). The *Rawlings* court first noted that Congress intended for RESPA to be a consumer protection statute and then analyzed cases interpreting other consumer protection statutes such as the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA") in concluding that "actual damages under RESPA include recovery for mental anguish." *Johnstone*, 173 F. Supp. 2d at 814 (citing *Rawlings*, 64 F. Supp. 2d at 1166-67). Because this Court finds *Rawlings* and *Johnstone*'s rationales persuasive, the Court holds that RESPA is a consumer protection statute and RESPA's actual damages provision includes recovery for emotional distress. Therefore, Ploog's mental anguish, if proven, would be included in her actual damages.

Because Ploog alleged both actual damages and statutory damages, it is not clear what her

total damages will be. In ruling on a motion to dismiss, the court's role is to "test the sufficiency of the complaint, not to decide the merits of the case." *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Because Ploog's total damages are yet to be determined, it is not clear that HomeSide's Rule 68 settlement offer is an amount more than Ploog can recover in this law suit. As such, the Rule 68 offer does not make Ploog's Count I claim moot, and HomeSide's motion to dismiss on this basis is denied.[1]

## B. Supplemental Jurisdiction Over Claims Against First Chicago

First Chicago requests that this Court decline to exercise supplemental jurisdiction over Counts II and III against First Chicago because the claims against it are distinct and separate from those against HomeSide. First Chicago asserts that this Court only has supplemental jurisdiction over the claims against it pursuant to the RESPA claim against HomeSide. First Chicago argues that the basis for the claims against it are completely different than those against HomeSide because the RESPA claim against HomeSide is based on HomeSide's failure to respond to qualified written requests pursuant to 12 U.S.C. § 2605(e)(1)(B), and the claims against First Chicago are based on an alleged breach of the Bixby-Ploog mortgage.

Ploog argues that First Chicago is responsible for creating the negative escrow balance that started the chain of events that led to this lawsuit. Plaintiff concedes that claims against HomeSide will require additional discovery, but she asserts that some of the discovery will certainly overlap, involving the same witnesses and documents. Further, Ploog argues that if the claims against First Chicago are dismissed, she will still have to take depositions and seek information from First Chicago about the negative escrow balance as a part of her claim against HomeSide. Ploog argues that dismissing the claims against First Chicago would require her to

---

[1] HomeSide argued that if the Court dismissed Count I, it should also dismiss Counts IV and V for lack of subject matter jurisdiction. The Court construes this argument as stating that the Court could, in its discretion, decline to exercise its supplemental jurisdiction over Counts IV and V. *See* 28 U.S.C. § 1367(a). However, because the Court has denied HomeSide's motion to dismiss Count I, this argument is moot.

9

engage in duplicative discovery in state and federal court.

28 U.S.C. § 1367(a) provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This section also states that "[s]uch supplemental jurisdiction shall include all claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). "The supplemental jurisdiction statute embraces and consolidates what had formerly been known as the separate concepts of 'pendent claim,' 'pendent party,' and 'ancillary' jurisdiction." *Hammond v. Clayton*, 83 F.3d 191, 194 (7th Cir. 1996). "Pendent party jurisdiction referred to the situation where a federal court exercised jurisdiction over claims involving parties not named in any independently cognizable federal claim." *Id.* First Chicago asks the Court to dismiss Counts II and III based on 28 U.S.C. § 1367(c)(4) which provides that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Ploog has alleged that it was the occurrence with First Chicago that began the series of events that led to this litigation. It is the negative escrow balance created while First Chicago held the Bixby-Ploog Mortgage that started the problems with HomeSide. It would follow then that Ploog may have to establish and explore what happened with First Chicago to support her claims, both RESPA and the other claims, against HomeSide. First Chicago's argument about the additional expense incurred to defend against a class action in which they have no part is moot since the class was not certified. Therefore, because First Chicago has not alleged any "exceptional circumstances" that would compel this Court to refuse supplemental jurisdiction over the claims against First Chicago, this Court in its discretion will continue to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**C. Joinder of an Indispensable Party**

10

First Chicago next argues that the claims against it should be dismissed pursuant to Rule 12(b)(7) for failure to join a party under Rule 19. Rule 19(a) provides, in pertinent part:

> Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

To determine whether joinder is necessary under Rule 19, the court must use a two-step inquiry. *Thomas v. United States*, 189 F.3d 662, 666 (7th Cir. 1999). "First, the court must determine whether a party is one that should be joined if feasible . . . ." *Id.* This question requires the court to analyze three factors:

> "(1) whether complete relief can be accorded among the parties to the lawsuit without joinder, (2) whether the absent person's ability to protect its interest in the subject-matter of the suit will be impaired, and (3) whether any existing parties might be subjected to a substantial risk of multiple or inconsistent obligations unless the absent person joins the suit."

*Id.* (citing Fed. R. Civ. P. 19(a)). "Only if the court concludes . . . that the party should be included in the action but it cannot be, it must go on to decide whether the litigation can proceed at all in the party's absence." *Id.*; Fed. R. Civ. P. 19(b). "If there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as 'indispensable' and the action is subject to dismissal . . . under Federal Rule of Civil Procedure 12(b)(7)." *Id.*

First Chicago argues that Bixby, as co-borrower and co-signor to the Bixby-Ploog Mortgage, has an interest in the subject matter of the claims against First Chicago, and that in his absence First Chicago incurs the risk of double or inconsistent obligations due to Bixby's interest. The question is whether Bixby's assignment of all of his interest in the claim arising from the Bixby-Ploog Mortgage is valid, and if it is valid, if that negates the necessity of his joinder.

First Chicago acknowledges that Ploog stated in her Second Amended Complaint that

11

Bixby had assigned all of his interest in his claims against First Chicago to Ploog. (Second Am. Compl. ¶ 4.) First Chicago argues that this is a "sham transaction" because a person cannot assign his or her interest in community property when the property is already held in the name of the purported assignee. (First Chicago Reply at 18.) First Chicago cites no case law for this proposition. Further, Illinois is not a community property state, so the property in question would have to be held between Ploog and Bixby in a different way, such as joint tenancy or tenancy in common, since it appears that both Ploog and Bixby are residents of Illinois. It is difficult to untangle the arguments by First Chicago surrounding the assignment that they so clearly find suspect. First Chicago argues that since Ploog only stated that Bixby assigned his interest in her Second Amended Complaint and did not attach the assignment, it is deficient. *Id.* Ploog was only required to allege that Bixby had assigned his interest to her, and attachment of the assignment to the complaint is not necessary for notice pleading. First Chicago then argues that Bixby cannot truly assign his interest when he is still subject to the rights, duties and obligations of the Bixby-Ploog Mortgage, and where he agreed to the PIN numbers of the Bixby-Ploog Mortgage. *Id.* Again, First Chicago cites no authority for this proposition.

"The proponent of a Rule 12(b)(7) motion to dismiss has the burden of producing evidence which shows the nature of the absent party's interest and that the protection of that interest will be impaired or impeded by the absence." *Taylor v. Chater*, 907 F. Supp. 306, 309 (N.D. Ind. 1995). Here, First Chicago failed to demonstrate that the assignment of Bixby's interest to Ploog was invalid. First Chicago may raise this issue in a motion for summary judgment and introduce evidence that this assignment is improper or invalid. At this point, the burden being with First Chicago, the assignment will be considered valid. Because Bixby's assignment if his interest in his claims against First Chicago appears valid at this juncture, Bixby cannot be deemed an indispensable party. First Chicago's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) is denied.

## D. Breach of Contract

Next, First Chicago contends that Ploog's Second Amended Complaint fails to allege the four necessary elements to sustain a cause of action for breach of contract. The facts set forth in the complaint against First Chicago alleging breach of contract are as follows. On April 30, 1998, Ploog purchased her home with a residential mortgage loan from First Chicago. (Second Am. Compl. ¶ 7.) Ploog states that shortly thereafter, First Chicago paid several property taxes for parcels that Ploog was not responsible for with Ploog's escrow funds which created a negative escrow balance of $5,919.77. (*Id.* ¶ 8.) First Chicago had a duty to pay the property taxes on Ploog's behalf when they became due from funds made available to it at the closing and from the monthly escrow deposits made by Ploog. (*Id.* ¶ 54.) A covenant of good faith and fair dealing was implied in the contract between First Chicago and Ploog, which placed upon First Chicago a duty of good faith and fair dealing in performance and enforcement of the contract terms to the extent they involve discretion on its part, such as the payment of taxes. (*Id.* ¶ 55.) First Chicago created a large escrow deficiency by improperly charging Ploog's account for thousands of dollars in real estate taxes relating to other properties owned by third parties. (*Id.* ¶ 56.) Somehow, First Chicago managed to insert the Property Identification Numbers (P.I.N.) for these other properties in Ploog's file. (*Id.*) First Chicago breached its duty of good faith and fair dealing by blindly paying taxes relating to other properties owned by third parties. (*Id.* ¶ 57.) Ploog alleges damages including: (1) having a negative escrow balance; (2) suffering mental anguish; and (3) having increased monthly payments as a result of First Chicago's actions. (*Id.* ¶ 57.)

The first issue that must be addressed is whether this Court may consider the Bixby-Ploog Mortgage between Ploog and First Chicago in its decision even though the Mortgage was not attached to Ploog's complaint. Ordinarily, if a court looks to documents outside of the pleadings, a motion to dismiss must be converted to a motion for summary judgment and the court must give plaintiffs notice and opportunity to submit additional evidentiary material. *Venture Assocs.*

*Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture*, 987 F.2d at 431.

Ploog refers to the Bixby-Ploog Mortgage between Ploog and First Chicago in the Second Amended Complaint. If fact, Ploog relies on the mortgage agreement as the very basis for her breach of contract claim. Therefore, the Court concludes that the Bixby-Ploog Mortgage is properly considered in evaluating the motion to dismiss.

First Chicago argues in both of its briefs factors that must be alleged to sustain a breach of contract claim. However, First Chicago overlooks the nature of the federal courts and notice pleading. Specifically, the Supreme Court in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit* rejected an imposition of heightened pleading standards except as required by Federal Rule of Civil Procedure 9(b) for averments of fraud or mistake. 507 U.S. 163, 168 (1993). This ruling reaffirmed the Supreme Court's holding in *Conley v. Gibson*, that allegations contained in a complaint should be liberally construed, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 47 (1957). Accordingly, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Further, the only two prerequisites for maintaining a contract action are the existence of a contract and its breach. *Patton v. Univ. of Chicago Hosps.*, 706 F. Supp. 627, 631 (N.D. Ill. 1989).

Determining whether Ploog has stated a cause of action for breach of contract must recognize this very liberal standard in pleading a cause of action. Ploog has clearly alleged that there was a contract between her and First Chicago. The only question is whether First Chicago breached this contract. Ploog alleges that First Chicago breached its duty of good faith and fair dealing in paying taxes from her escrow account on property that she did not own. "A covenant

of good faith and fair dealing is implied in every contract absent a provision that specifically states otherwise." *Kipnis v. Mandel Metals, Inc.*, 318 Ill. App. 3d 498, 505, 741 N.E.2d 1033, 1038 (1st Dist. 2000). "[T]he doctrine of good faith performance imposes a limitation on the exercise of discretion vested in one of the parties to a contract." *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972, 990-91, 466 N.E.2d 958, 972 (1st Dist. 1984). In determining what constitutes a good faith performance, "a party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Id.*

In this case, the question is whether First Chicago had discretion in their decision to pay property taxes on the properties listed in the contract, and, if so, if they exercised that discretion in a reasonable way or in an arbitrary, capricious, or other manner inconsistent with the expectations of the parties. Ploog has alleged in her complaint that First Chicago breached its duty of good faith and fair dealing. It is not obvious from the Bixby-Ploog Mortgage whether First Chicago breached its obligation or not. Ploog is entitled to further discovery to support her claim. Thus, First Chicago's motion to dismiss Count II is denied.

### E. Breach of Fiduciary Duty

First Chicago first argues that Ploog's claim for breach of fiduciary duty is barred by the *Moorman* doctrine, which stands for the notion that "[w]hen only economic loss is incurred, the plaintiff may only raise contract theories even if the defendant's alleged conduct constituted a tort as well as a breach of contract." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 369 (7th Cir. 1992). However, *Moorman* is inapplicable to contract and agency theories. *Ill. Constr. Corp. v. Morency & Assocs., Inc.*, 802 F. Supp. 185, 188 (N.D. Ill. 1992). "Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.

2d 137, 162, 636 N.E.2d 503, 514 (1994). "Although fiduciary duties may coexist with contractual duties, the two are distinct and impose separate, independent obligations." *Fed'l Deposit Ins. Corp. v. Miller*, 781 F. Supp. 1271, 1277 (N.D. Ill. 1991).

The question, then, is whether the relationship between First Chicago and Ploog gave rise to a fiduciary duty. The existence of a fiduciary relationship would arise outside of the contract and would constitute an exception to the *Moorman* doctrine. *Congregation*, 159 Ill. 2d at 162-63, 636 N.E.2d at 514-15. "[M]ismanagement of an escrow may give rise to a cause of action for a breach of fiduciary duty." *Choi v. Chase Manhattan Mortgage Co.*, 63 F. Supp. 2d 874, 885 (N.D. Ill. 1999). Mortgage contracts carry with them an implied duty of professional competence "analogous to the way the duty of good faith and fair dealing is imputed as a term of the contract." *Id.* This implied duty is similar to the duties of attorneys and accountants to use their own knowledge and expertise and therefore makes the duty arise outside of the contract. *Congregation*, 159 Ill.2d at 162-63, 636 N.E.2d at 514-15. The Illinois Supreme Court has been clear that there is an exception to the *Moorman* doctrine when the duty in question arises independently of a contract. *Id.* at 164, 636 N.E.2d at 515 (holding that accountants, like attorneys, have an intangible duty independent from a contract to use reasonable professional competence.) Thus, the mortgage contract gave rise to a fiduciary relationship between First Chicago and Ploog, which makes the *Moorman* doctrine inapplicable.

Next, First Chicago argues that Ploog has failed to allege any breach of fiduciary duty by First Chicago. (First Chicago Mem. Supp. Mot. Dismiss at 11.) Ploog alleges in her Second Amended Complaint that First Chicago was her agent for the purpose of paying taxes from funds made available to it by Ploog and that First Chicago breached this duty by paying incorrect taxes. (Second Am. Compl. ¶ 60-61.) As discussed above, the Supreme Court in *Leatherman* rejected an imposition of heightened pleading standards except as required by Rule 9(b). 507 U.S. 163, 168 (1993). This case does not involve allegations falling within the ambit of Rule 9(b), and

therefore, no heightened pleading standard applies. Because Ploog has alleged a breach of fiduciary duty based on an agency relationship, this is sufficient to withstand a motion to dismiss, and thus First Chicago's motion to dismiss Count III is denied.

## CONCLUSION

For the reasons set forth above, the Court denies HomeSide's motion to dismiss [doc. no. 117-1] and denies First Chicago's motion to dismiss [doc. no. 53-1].

**SO ORDERED**  ENTERED: 3/18/02

HON. RONALD A. GUZMAN
**United States Judge**